UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

GREGORY J. MILLER, Trustee for
the Heirs and Next-of-Kin of
JUSTIN J. MILLER, decedent,

      Plaintiff,

v.

UNITED STATES OF AMERICA,

      Defendant.

Civil Case No.: _____

**COMPLAINT**

---

Plaintiff, for his cause of action against the Defendant, herein alleges and states as follows:

## I. INTRODUCTION

1. This is an action against the Defendant United States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2671, et seq., and 28 U.S.C. §1346(b)(l), for medical negligence in connection with care provided to decedent Justin J. Miller ("Miller") by the U.S. Department of Veterans Affairs at the Minneapolis VA Health Care System ("Minneapolis VA").

2. The claims herein are brought against the Defendant pursuant to the FTCA for money damages as compensation for the pecuniary loss suffered by Plaintiff Gregory J. Miller ("Plaintiff") and decedent's other next-of-kin as a result of Justin's death as provided in Minn. Stat. § 573.02.

3. Plaintiff has fully complied with the provisions of 28 U.S.C. § 2675 of the FTCA by timely serving a notice of claim on the U.S. Department of Veterans Affairs within two years of the date his cause of action accrued. (*See* Standard Form 95 at Exhibit A)

4. This Complaint is now timely filed pursuant to 28 U.S.C. § 2401(b) after receiving an administrative denial of claim letter from the U.S. Department of Veterans Affairs dated August 20, 2020. (*See* Exhibit B.)

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1346(b)(1). Decedent Miller died in the parking lot of the Minneapolis VA shortly after discharge from the hospital. Plaintiff alleges that Miller's death was caused by the negligent or wrongful acts or omissions of Defendant's agents or employees while acting within the scope of their agency, office, or employment.

6. Venue is proper in this District pursuant to 28 U.S.C. §1402(b) because Plaintiff resides within the territorial limits of the United States District Court for the District of Minnesota, and the events giving rise to Plaintiff's claims occurred within this District.

## III. PARTIES

7. Plaintiff Gregory J. Miller is, and at all times relevant to this Complaint was, a resident of the City of Lino Lakes, County of Anoka, State of Minnesota. Plaintiff Miller was appointed Trustee by Order of the Hennepin County District Court to prosecute a wrongful death/medical malpractice claim on behalf of the heirs and next-of-kin of his son, Justin J. Miller.

8. At all times material to this Complaint, decedent Justin Miller was a resident of the State of Minnesota and maintained his residence in the City of Robbinsdale, County of Hennepin.

9. The U.S. Department of Veterans Affairs is a federal agency established under the laws of the Defendant United States of America.

10. The Department of Veterans Affairs operates the Minneapolis VA, located in the City of Minneapolis, County of Hennepin, State of Minnesota.

11. At all times relevant to this Complaint, the Minneapolis VA was engaged in the business and profession of caring for the ill, and held itself out to veterans and the public to be well-able to perform its functions as a health care provider and, specifically, that its physicians, nurses, social workers, and other employees were well-able to perform their duties and responsibilities in the care of patients entrusted to such persons.

12. At all times relevant to this Complaint, the directors, officers, operators, administrators, employees, agents, and staff of the Minneapolis VA who directed or provided care to Justin Miller were employed by and/or acting on behalf of the Defendant. Furthermore, Defendant is responsible for the negligent acts of its employees and agents under the doctrine of respondeat superior.

### IV. FACTS

13. Justin Miller was a 33-year-old Marine Corps veteran who was deployed to Iraq in 2005 and served with the 2nd Marine Aircraft Wing. He reported experiencing traumatic events during his deployment to Iraq, including being involved in several mortar attacks. Miller was honorably discharged in 2007.

14. On February 20, 2018 at approximately 12:17 p.m., Miller called the VA National Suicide Prevention Hotline because he was having suicidal thoughts along with mental illness, economic problems, homelessness, domestic violence, and post-traumatic stress disorder. He admitted to having "immediate access to guns" but would not answer questions about his plan or intent for suicide. When asked whether he could ask someone to keep his guns during this period of crisis, Miller replied that he was unable to immediately do so. Miller's risk for suicide was rated as "moderate to high", and he agreed to drive himself to the Minneapolis VA emergency department for evaluation and admission to the hospital.

15. Miller presented to the Minneapolis VA on February 20, 2018 at 1:48 pm. complaining of suicidal thoughts, saying "I just want everything to go away." Miller was evaluated by staff psychiatrist Bruce Hermansen, MD at about 5:18 p.m., and at that time reported chronic thoughts of suicide and a wish that he was not alive. He admitted having access to guns and thoughts of suicide via guns. Dr. Hermansen's treatment plan was an observational admission to 1K for safety, stabilization, and crisis management.

16. A Suicide Prevention Risk Assessment Screening was performed by social worker supervisor John Montalto ("SWS Montalto") at or about 7:11 p.m. SWS Montalto noted that Miller was having thoughts of suicide and wanted to be dead. He admitted to having a suicide plan, stating that "a gun is always an option", and his suicide risk assessment was recorded as "severe".

17. On the morning of February 21, 2018, Miller told social worker and Suicide Prevention Case Manager Kyle Jendro ("SW Jendro") that he had access to guns, was having thoughts of suicide via guns, and that he had thought about "lots of other ways" as well.

18.   Miller was then evaluated by inpatient mental health nurse practitioner Cathleen A. Scully ("NP Scully"). NP Scully documented his mood as depressed and hopeless, and that he felt he was a burden on his parents. NP Scully noted Miller's preoccupation with thoughts of suicide, and that "he would want to kill himself with a method that would not cause considerable pain, where there would be no room for [error] and in a manner which would allow him to maintain his appearance."

19.   Miller met with inpatient social worker Rachel Hawkins ("SW Hawkins") on February 22, 2018 and expressed anxiety with the plan to discharge him the following day to the home of his parents. Miller said he had reservations about staying with his parents following discharge. He voiced frustration about having to rely on his parents and felt as though staying with parents would be unfair to them. SW Hawkins' plan was for Miller to remain on 1K one more night with likely discharge to his parent's home the next day.

20.   On the afternoon of February 22, 2018, Miller met with registered nurse Thomas M. Clairmont ("RN Clairmont"), who completed a change in level of care order, converting Miller from an observation admission to a full admission. RN Clairmont noted that Miller was depressed and tearful during this meeting, saying that he wanted help, wanted to have a plan in place for when he leaves the hospital, and wanted to stop having thoughts about harming himself. RN Clairmont placed Miller on 30-minute checks for the duration of his hospitalization.

21.   Miller completed a Safety Plan with RN Clairmont on the morning of February 23, which required him to "[t]ake responsibility for safety at home: Remove the means from your home whenever possible (such as firearms)".

22.   At 1:00 p.m. on February 23, Miller was discharged from the Minneapolis VA, with the plan that he would drive himself from the hospital to his parents' home in Lino Lakes.

5

23. In her Discharge Summary dictated after Miller's discharge at 2:07 p.m., NP Scully reported Miller's suicide risk at discharge as "low". Less than four hours earlier, however, Scully recorded Miller's suicide risk level as "intermediate/moderate".

24. At 10:38 a.m. the following morning (February 24), during a routine patrol of the VA hospital parking lot, Minneapolis VA police observed a blue Nissan Frontier parked and running in the VA parking lot. The vehicle was covered with and surrounded by snow. All of the doors were locked, and the windows were rolled-up.

25. The vehicle was unlocked by the VA Police, and the body of Justin Miller was sitting in the driver's seat, slouched to the right and leaning forward, with a gunshot wound to his right temple. A KelTec P3AT .380 caliber pistol was in his lap under his right hand. The gun was registered to and owned by Justin Miller.

26. An autopsy was performed on February 25, 2018 which confirmed the cause of death to be a self-inflicted gunshot wound of the head. Based upon the autopsy, and an investigation by the Hennepin County Sheriff's Office, Justin Miller's manner of death was determined to be suicide.

## CAUSE OF ACTION
**Medical Malpractice**

27. Plaintiff incorporates by reference each and every allegation set-forth in the preceding paragraphs as if fully stated herein, and further states and alleges as follows.

28. The doctors, nurses, social workers, and other staff who provided care and treatment to Miller at the Minneapolis VA in February 2018 were employees and/or agents of Defendant, and were acting within the course and scope of their employment at all times they provided such care and treatment.

29. The doctors, nurses, social workers, and other staff at the Minneapolis VA who provided care and treatment to Miller in February 2018 had a duty to exercise that same degree of skill and care that hospitals, doctors, nurses, social workers, and other staff in the community would exercise in the same or similar circumstances.

30. Defendant's doctors, nurses, social workers, and other staff were careless and negligent and failed to meet the accepted standard of care owed to Justin Miller. Examples of such negligence include, but are not limited to, the following:

   a. failing to provide lethal means counseling during Safety Planning Intervention;

   b. failing to assess Miller's access to guns, and take steps to eliminate or reduce his access to guns, prior to discharge;

   c. failing to engage Justin Miller's parents in discharge planning; and

   d. failing to confirm that Justin Miller's parents were aware of the plan to discharge Miller to their home and that they agreed with the plan

These negligent acts and omissions, and others not enumerated here, violated the existing standards of care at the time Justin Miller was under Defendant's care.

31. The acts and omissions of Defendant's doctors, nurses, social workers, and other staff were within the course and scope of their employment and agency, and Defendant is vicariously liable for their negligence.

32. The professional negligence and carelessness of Defendant's doctors, nurses, social workers, and other staff was a substantial factor in, and cause of, Justin Miller's suicide.

33. As a result of Justin Miller's wrongful death, his heirs and next of kin have incurred expenses, including funeral and burial expenses, and they have further sustained pecuniary loss and the loss of aid, advice, comfort, assistance, protection, and companionship

within the meaning of Minn. Stat. § 573.02, and were otherwise damaged in a reasonable amount in excess of $75,000.00.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against the Defendant for a reasonable amount in excess of $75,000.00, together with his interest, costs and disbursements.

Dated: January 22, 2021                                           MESHBESHER & SPENCE, LTD.


By  /s/ Anthony J. Nemo
Anthony J. Nemo (MN#221351)
Ashleigh Raso (MN#0393353)
2519 Commerce Drive NW, Suite 120
Rochester, MN 55901
Telephone: (507) 280-8090
Facsimile: (507) 280-0807
tnemo@meshbesher.com
araso@meshbesher.com

Attorneys for Plaintiff Gregory J. Miller